## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**MATTHEW SCHEALL,**

    *Plaintiff,*

    v.

**UNITED STATES DEPARTMENT OF EDUCATION,**

    *Defendant.*

Case Number:

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **Matthew Scheall** ("**Mr. Scheall**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, **United States Department of Education** ("**DOE**"), stating as follows:

## PRELIMINARY STATEMENT

1.    This is an action brought by Mr. Scheall against the Defendant for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2.    Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331, as the FCRA is a federal statute.

3.    The Defendant is subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat., and Fed R. Civ P. 4(k).

4.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2), because the acts complained of were committed and / or caused by the Defendant within Polk County, which is in the Middle District of Florida.

## PARTIES

5.     **Mr. Scheall** is a natural person residing in the City of Lakeland, Polk County, Florida.

6.     Mr. Scheall is a *Consumer* as defined by 15 U.S.C. § 1681a(c).

7.     **DOE** is a department of the United States government, and can be served via **General Counsel, United States Department of Education, 400 Maryland Avenue SW, Washington, DC 20202.**

8.     DOE is a furnisher of information to Experian, Equifax, and Trans Union, which are *Consumer Reporting Agencies* ("**CRAs**").

## FACTUAL ALLEGATIONS

9.     Between 2013 and 2017, Mr. Scheall obtained federally-guaranteed student loans to further his education at Southeastern University in Lakeland, Florida.

10.     At least four of these loans were serviced directly by the DOE, while others were serviced by outside servicers, although repayment of them was guaranteed via the DOE.

11.     At no point was Mr. Scheall ever late with any required payments or in any way even alleged to be past-due, delinquent, or in default by the DOE.

12.     At no point did the DOE refer any of his loans, or any portion of his loans, to an outside collection agency, or refer them to in-house collection staff.

13.     For unknown reasons, at some point, the DOE reported the Metro 2 code "T" in four of its tradelines concerning Mr. Scheall's loans, in Field 38 of the Base Segment, Field 11 of the J1 Segment, and/or Field 11 of the J2 Segment.

14.     This code is a "Consumer Information Indicator" and is used to report to the major nationwide CRAs – including Experian, Equifax, Trans Union, and Innovis – that a particular condition exists.

15.     "T" means "credit grantor cannot locate consumer," which, as the plain meaning of the words indicate, the mailing address, e-mail address and/or phone number the creditor has is no longer valid and the creditor's attempts to locate the individual have failed.

16.     Mr. Scheall is unaware of why the DOE believes it has lost track of him, especially considering that Mr. Scheall has at least *13 other student loans* guaranteed through the DOE; all of these loans are also reported to the CRAs, but at no point were any of them reported with any kind of Consumer Information Indicator whatsoever.

17.     Due to the "T" Consumer Information Indicator reported on four student loans serviced by the DOE, Experian categorized the four tradelines as

derogatory, or, in its parlance, "potentially negative" – the same label given to loans with payments more than 30 days past due and collection accounts. **SEE PLAINTIFF'S EXHIBIT A.**

18.     Experian's automated systems noted the account status was "creditor cannot locate individual/never late." *Id.*

19.     Experian considers the "T" Consumer Information Indicator to be highly derogatory because it potentially indicates the consumer provided false information to the creditor about his whereabouts and could indicate an intent to defraud.

20.     Around October 6, 2023, Mr. Scheall applied for a home mortgage with Gardner Financial Services, Ltd. d/b/a Legacy Mutual Mortgage ("Legacy Mutual") seeking to purchase a home for him and his family.

21.     Mr. Scheall intended to obtain a low down-payment mortgage through the Federal Housing Administration ("FHA").

22.     As part of the application process, Legacy Mutual requested a "tri-merge" credit report from Xactus regarding Mr. Scheall.

23.     Xactus, in response to Legacy Mutual's request, requested and obtained a consumer report from Experian regarding Mr. Scheall.

24.     Xactus then merged the credit information it obtained from Experian with information it obtained from other CRAs, Equifax and Trans Union, into a

single, composite report, often referred to as a "tri-merge" report, which it provided to Legacy Mutual.

25.     The merged file included four tradelines from the DOE under the header of "collection accounts," due to the DOE's reporting that the "creditor cannot locate individual." **SEE PLAINTIFF'S EXHIBIT B.**

26.     FHA underwriting guidelines generally require at least a 620 FICO® score from two of the three credit bureaus from which reports are obtained; Mr. Scheall's scores all surpassed this mark by a considerable margin.

27.     However, FHA underwriting guidelines also require there to be no federally-guaranteed debts in default or collection.

28.     Around October 26, 2023, Mr. Scheall disputed the four DOE tradelines to Experian, stating that the "creditor cannot locate individual" notation was inaccurate; in his dispute, Mr. Scheall stated his correct address, e-mail, and phone number in the event the DOE did not have it for some reason.

29.     Experian sent four *Automated Consumer Dispute Verification* ("ACDV") requests through an automated system known as e-OSCAR to the data furnisher, the DOE, with a 2- or 3-digit code or codes indicating the general nature of the dispute and any consumer narrative provided.

30.     Experian's automated systems also forward the consumer narrative to the data furnisher.

31.    The ACDVs also contained the information the CRA has on file for the consumer making the dispute; thus, the DOE had Mr. Scheall's current address provided to it literally in the ACDV information provided by Experian, in addition to Mr. Scheall's narrative comments reiterating what his current contact information was.

32.    The DOE was thereafter required by law to make its own reasonable investigation into the dispute. *See* 15 U.S.C. § 1681s-2(b).

33.    Within 48 hours, the DOE returned the four ACDVs to Experian, indicating its tradeline information had been "verified as accurate" by the DOE, including – somehow – the notation that it still could not locate Mr. Scheall, despite him having provided his correct address, e-mail, and phone number in the narrative of his dispute, as well as his current and correct address and phone number provided to the DOE in the ACDV itself by Experian.

34.    For plain and obvious reasons, the DOE failed to make a reasonable investigation. Despite (a) having Mr. Scheall's correct contact information available in its files, as evidenced by the 13 other accounts of which it is a guarantor reporting sans-"T" code; (b) being told, point-blank, by Mr. Scheall what his current address, e-mail, and phone number were; and, (c) being informed in the ACDV itself what Mr. Scheall's current address and phone number was, the DOE nonetheless concluded it still could not locate him.

35.    The DOE was, at the time of its investigation into Mr. Scheall's disputes, in possession of *information directly contradicting* the information reported – his address, e-mail, and phone number were contained within the text of the disputes as well as in the ACDV consumer information provided by Experian.

36.    The DOE then updated its reporting to include a "Compliance Condition Code" ("CCC") of "XB," or "consumer disputes this account information." *Id.*

37.    This simply made matters worse for Mr. Scheall, since (a) FICO® credit scores are programmed to ignore student loan tradelines reporting the "XB" CCC, meaning that what should have been years of positive data without late payments were now excluded from Mr. Scheall's credit scores; and, (b) FHA underwriting standards prohibit approval of an applicant with more than $1,000 of disputed, non-medical debt reporting to his credit file.

38.    Here, the DOE could have easily, and with little burden, discovered the obvious errors in its reporting, especially since even a cursory review of the dispute narratives should have resolved any question as to whether the DOE could locate Mr. Scheall.

39.    Records from Experian show it produced and sold at least 15 credit reports to third parties concerning Mr. Scheall in the last 12 months, which

included the DOE tradelines being falsely labeled as "derogatory," including reports to many mortgage lenders and automobile financing companies.

40.    As a result of the Defendant's actions, Mr. Scheall has suffered both economic and non-economic injuries, including the expenditure of his time and the hiring of legal counsel to rectify the Defendant's obvious reporting errors.

41.    Mr. Scheall has also suffered from emotional distress, an inability to obtain credit, an inability to apply for new credit, and an inability to benefit from his good name and reputation.

42.    Mr. Scheall has hired the undersigned law firm to represent him in this matter and has assigned to them his right to obtain reimbursement for his reasonable fees and costs.

## COUNT I
## WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)

43.    Mr. Scheall adopts and incorporates paragraphs 1 – 42 as if fully stated herein.

44.    The DOE violated **15 U.S.C. § 1681s-2(b)** when it failed to conduct a reasonable investigation after receiving notice of dispute of the four accounts from Experian, as any reasonable investigation would have concluded that the DOE had sufficient information to locate Mr. Scheall, and as such, the reported code indicating otherwise should be deleted or modified.

45.    Further, the DOE had no reason to believe the *account information* was

disputed by Mr. Scheall, since he did not dispute it (as it was 100% positive), and Ms. Scheall disputed only the notation that his location could not be determined.

46.    The DOE's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not.

47.    The DOE's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Mr. Scheall.

48.    Accordingly, pursuant to 15 U.S.C. § 1681n, the DOE is liable to Mr. Scheall for the greater of his actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Scheall respectfully requests that this Honorable Court enter judgment against the DOE for:

a.    The greater of statutory damages of $1,000 per incident, or Mr. Scheall's actual damages pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.    Such other relief that the Court deems just and proper.

## COUNT II
## NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)
### (Pled in the alternative to Count I)

49.     Mr. Scheall adopts and incorporates paragraphs 1 – 42 as if fully stated herein.

50.     The DOE violated **15 U.S.C. § 1681s-2(b)** when it failed to conduct a reasonable investigation after receiving notice of dispute of the four accounts from Experian, as any reasonable investigation would have concluded that the DOE had sufficient information to locate Mr. Scheall, and as such, the reported code indicating otherwise should be deleted or modified.

51.     Further, the DOE had no reason to believe the *account information* was disputed by Mr. Scheall, since he did not dispute it (as it was 100% positive), and Ms. Scheall disputed only the notation that his location could not be determined.

52.     The DOE's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not.

53.     The DOE's conduct was the result of negligence, and pursuant to 15 U.S.C. § 1681o, the DOE is liable to Ms. Scheall for his actual damages, as well as his reasonable attorneys' fees, and costs.

**WHEREFORE,** Mr. Scheall respectfully requests that this Honorable Court enter judgment against the DOE for:

a.    Mr. Scheall's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that the Court deems just and proper.


### DEMAND FOR JURY TRIAL

Mr. Scheall hereby demands a jury trial on all issues so triable.

Respectfully submitted on March 14, 2024, by:

SERAPH LEGAL, P. A.

/s/ Brandon D. Morgan
Brandon D. Morgan, Esq.
Florida Bar No.: 1015954
BMorgan@SeraphLegal.com
Thomas M. Bonan, Esq.
Florida Bar No.: 118103
TBonan@SeraphLegal.com
2124 W. Kennedy Blvd., Ste. A
Tampa, FL 33606
Tel: 813-567-1230
Fax: 855-500-0705
Attorneys for Plaintiff

## ATTACHED EXHIBIT LIST

A    Mr. Scheall's Experian Consumer Disclosure, October 26, 2023, Student Loan Tradelines - Excerpts

B    Mr. Scheall's Tri-merge Credit Report Produced by Xactus, October 4, 2023 – Excerpt